UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                   :

M.Z. and M.Z., individually and on behalf of J.Z.,    :

              Plaintiffs,                    :

                -v-                       :

THE NEW YORK CITY DEPARTMENT OF      :
EDUCATION,                                   :
                                        :

             Defendant.                  :
------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 21, 2013

12 Civ. 4111 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

Plaintiffs-appellants M.Z. and M.Z. (collectively, the "Parents"), on behalf of their minor child J.Z. (the "Student"), bring this action pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. (the "IDEA"). Plaintiffs seek review of the January 23, 2012, administrative decision of State Review Officer Justyn P. Bates (the "SRO"). The SRO's decision reversed the October 4, 2011, decision of Impartial Hearing Officer Julie P. Passman (the "IHO") and annulled the IHO's award of tuition payment and reimbursement for the Student's attendance at a private school during the 2010-2011 school year. Plaintiffs moved for summary judgment, seeking an order reversing the SRO decision and reinstating the IHO's award of tuition payment and reimbursement. Defendant, the New York City Department of Education ("DOE"), cross-moved for summary judgment, seeking an order upholding the SRO decision and dismissing plaintiffs' complaint.

1

A motion for summary judgment in an IDEA case is "in substance an appeal from an administrative determination, not a summary judgment [motion]." M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 226 (2d Cir. 2012) (quoting Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ., 397 F.3d 77, 83 n.3 (2d Cir. 2005)) (internal quotation marks omitted).  The motion triggers review of "a state's compliance with the procedures set forth in [the] IDEA" and whether the challenged individualized education program ("IEP") is "reasonably calculated to enable the child to receive educational benefits." Id. at 225-26 (quoting Lillbask, 397 F.3d at 83 n.3).  "[B]asing its decision on the preponderance of the evidence, [the Court] shall grant such relief as [it] determines is appropriate."  20 U.S.C. § 1415(i)(2)(C)(iii).  The review is substantive and considers more than whether a material fact is disputed.

For the reasons set forth below, the Court GRANTS defendant's motion for summary judgment and DENIES plaintiffs' cross-motion for summary judgment.

## I. BACKGROUND

The following facts are undisputed unless otherwise indicated.

### A. The Plaintiffs

The Student was born on September 23, 1992.  He has disabilities involving, among other things, significant cognitive issues, language deficits, and severe difficulties with social interaction.  (Pls.' Local Rule 56.1 Statement of Material Facts ¶ 5, ECF No. 12 ("PSOF").)  Furthermore, he has "unpredictable and significant self-regulatory and behavioral issues, including inappropriate touching, inappropriate vocalizations, hand flapping, removing his clothing, and engaging in

loud outbursts." (Id. ¶ 6.) The Student attended special needs pre-kindergarten settings before moving to private schools. (Id. ¶ 3.) He enrolled at Kulanu Academy ("Kulanu") for the 2007-2008 school year and has remained there ever since. (Id. ¶ 4.) During the 2010-2011 school year, the Student was 18 years old.

### B. The CSE Meeting and the Student's IEP

On March 10, 2010, a committee on special education ("CSE") convened for the Student's annual review to develop his IEP for the 2010-2011 school year. The CSE consisted of: (1) the Student's parents; (2) Jacqueline Giurado, a DOE special education teacher and district representative; (3) Nancy Levine, a DOE school psychologist; (4) a parent member; (5) Ms. Oswald, the Student's classroom teacher at Kulanu; (6) Ms. Zimmerman, the Student's occupational therapist at Kulanu; (7) Ms Klier, the Student's speech therapist at Kulanu; (8) Mr. Trotta, the Student's vocational education teacher at Kulanu; and (9) Ms. Savnik, a Kulanu social worker. (Def.'s Local Rule 56.1 Statement of Material Facts ¶ 4, ECF No. 15 ("DSOF").)

At the meeting, the CSE reviewed numerous reports provided by Kulanu representatives, including Speech and Language, Occupational Therapy, Physical Therapy, counseling, transition progress, academics, and vocational reports. (PSOF ¶ 12; DSOF ¶ 5.) The latest psycho-educational assessment of the Student, Dr. Steinberg's 2008 evaluation, was not discussed. (PSOF ¶ 12.) But the DOE psychologist, Ms. Levine, testified that she had a copy of that report and had reviewed it before the meeting. (Administrative R., Apr. 28, 2011, Hr'g Tr. 50-51,

ECF No. 27.)  The report concluded, among other things, that the Student needed a "calm, well-structured setting, with a high teacher to student ratio (specifically 12:1:1) which will provide him with the one-on-one attention that he needs." (Administrative R., IHO Ex. 6., ECF No. 27.)

Based on the information available at the CSE meeting, the team crafted the Student's IEP for the 2010-2011 school year.  The IEP "recommended that [the Student] be placed in a 12:1:1 special class, including twelve students, one special education teacher, and one classroom paraprofessional, in a specialized school on a twelve month basis, along with [various] related services."  (Pls.' Objections and Responses to Def.'s Local Civil Rule 56.1 Statement of Material Facts Not in Dispute ¶ 7, ECF No. 18 ("PCSOF").)  The IEP also "included the services of a full-time individual paraprofessional" assigned to the Student.  (Id.)  The Student's previous IEP had recommended a 15:1 class, and the Parents objected to the change to a 12:1:1 class.  (PSOF ¶ 18.)  During the 2010-2011 school year at Kulanu, the school the Student ultimately attended, he was placed in a class with "twelve students, a head teacher, and an assistant teacher."  (PCSOF ¶ 14.)

"The IEP [contained] 11 annual goals and 47 short-term objectives addressing a wide range of the Student's academic, social, behavioral, transitional, and related-service needs."  (DSOF ¶ 17; Administrative R., IHO Ex. 9 at 6-12, ECF No. 27.)  For example, the IEP provided an annual goal relating to occupational therapy, noting that the Student will "demonstrate improved fine-motor coordination skills."  (Administrative R., IHO Ex. 9 at 6, ECF No. 27.)  A

corresponding short-term objective provided that the Student will "become familiar with a keyboard and correct hand placement with 70% accuracy." (Id.)  The IEP also contained a behavioral intervention plan ("BIP") (id. at 18), and a transition plan, although the parties responsible for implementing transition services were not specified.  (Id. at 17.)

### C. Plaintiffs' Rejection of the Placement and Their Complaint

On June 10, 2010, defendant offered the Student a placement at P-721, the Manhattan Occupational Training Center.  (DSOF ¶ 21.)  After touring P-721 on June 15, 2010, the Student's father "informed the CSE by letter dated July 2, 2010 that he was rejecting the offered placement," that he would enroll the Student at Kulanu, and that he would seek reimbursement of the tuition.  (See id. ¶ 40.)  On September 12, 2010, plaintiffs signed a contract with Kulanu obligating them to pay $54,050 in tuition and fees.  (Id. ¶ 42.)  On April 29, 2011, they agreed to pay an additional $46,823.50 for related services.  (Id.)  Defendant did not reimburse plaintiffs.  They filed a due process complaint alleging that defendant failed to offer the Student a FAPE for the 2010-2011 school year due to several substantive and procedural deficiencies with the IEP, including, inter alia, the failure to:

- consider updated evaluative information;
- conduct a functional behavior assessment ("FBA");
- design a sufficient BIP;
- include an adequate transition plan;

- describe sufficiently the Student's present levels of academic achievement and functional performance;

- provide sufficiently measurable goals; and

- offer a suitable placement classroom.

(Pls.' Mem. Law Before SRO 1-13, ECF No. 29.)  Plaintiffs seek reimbursement for the tuition at Kulanu, the related services, and individual full-time crisis management paraprofessional services.

### D. The Decisions of the IHO and SRO

The IHO issued her Findings of Fact and Decision on October 4, 2011, finding that: (1) the CSE considered insufficient evaluative information; (2) the lack of the FBA resulted in a flawed BIP; (3) the transition plan was vague and incomplete; (4) the IEP did not sufficiently describe the Student's present levels of functioning; (5) the goals were not sufficiently measurable; and (6) the school would not have been able to implement the related services as mandated in the IEP.  (Compl. Ex. A at 18, 25, 37, ECF No. 1 ("IHO Decision").)  Furthermore, she sua sponte found that the offered placement included insufficient academic instruction.  (Id. at 30-31; Administrative R., IHO Ex. 11, ECF No. 27.)

Despite finding these flaws in the IEP and offered placement, the IHO did not find for plaintiffs in all regards.  In particular, the IHO concluded that the Student would have had appropriate worksite opportunities and that plaintiffs could not rely on documents showing that some students at P-721 had previously not received all mandated services.  (IHO Decision 35, 34.)

Nonetheless, the IHO found that the other flaws constituted the denial of a FAPE. Because she also concluded that Kulanu was an appropriate placement for the Student, and that the equities favored plaintiffs, she awarded reimbursement. (Id. at 48.)

Defendant appealed the decision to the SRO. While plaintiffs raised many of these same arguments in the context of opposing defendant's appeal, they did not cross-appeal any the IHO's finding that were adverse to them.

The SRO reversed the IHO, concluding that defendant had provided the Student with a FAPE for the 2010-2011 school year. In an extensive review of the record spanning thirty single-spaced pages, the SRO found, inter alia, that: (1) the CSE considered sufficient evaluations of the Student; (2) the failure to conduct an FBA did not rise to the level of depriving the Student a FAPE; (3) the transition plan, although technically defective, did not rise to the level of depriving the Student a FAPE; (4) the IEP sufficiently described the Student's present levels of functioning; (5) the short-term goals were sufficiently detailed to overcome any deficiencies in the annual goals; and (6) the offered placement would have been able to provide the Student his related services. (Compl. Ex. B at 13-18, 22-25, 25-27, 18-20, 20-22, 27-29, ECF No. 1 ("SRO Decision").)

In addition to its findings on the merits, the SRO also held against the plaintiffs on two separate procedural grounds. First, it found that plaintiffs did not preserve the right to contest the IHO's adverse findings, which they failed to cross-appeal. Second, it found that the IHO improperly considered the sufficiency of the

7

academic instruction at P-721 because plaintiffs did not raise that issue in their due process complaint.  (Id. at 11-13.)

As the SRO found that the DOE had provided the Student a FAPE for the 2010-2011 school year, the SRO did not consider the appropriateness of plaintiffs' unilateral placement or evaluate the equitable considerations.  (Id. at 29-30.)

Plaintiffs now appeal the SRO's decision.

## II. LEGAL FRAMEWORK

### A. General Framework

The IDEA requires states receiving federal funds to provide all children with disabilities in the state a FAPE "that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living."  20 U.S.C. § 1400(d)(1)(A); see also 20 U.S.C. § 1412(a)(1)(A).  A FAPE must "be reasonably calculated to enable the child to receive educational benefits."  Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 107 (2d Cir. 2007) (quoting Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 122 (2d Cir. 1998)).

An IEP is adequate under the IDEA if it is "likely to produce progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement."  T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 254 (2d Cir. 2009) (quotation marks omitted).  An IEP is not required to "furnish[] . . . every special service necessary to maximize each handicapped

child's potential." Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 379 (2d Cir. 2003) (citation omitted).

The IDEA "authorizes reimbursement for the cost of private special-education services when a school district fails to provide a FAPE." Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 247 (2009); see also Cerra v. Pawling Cent. Sch. Dist., 427 F.3d 186, 192 (2d Cir. 2005). Courts conduct a two-part analysis to determine whether a school district has offered to provide a student with a FAPE: "First, the court asks whether the State complied with the procedures set forth in the [IDEA]. . . . Second, the court asks whether the IEP developed through the [IDEA]'s procedures [is] reasonably calculated to enable the child to receive educational benefits." M.H., 685 F.3d at 245 (internal quotation marks and citations omitted). If the State has failed to comply with the procedural or substantive requirements of the IDEA in a manner that constitutes the denial of a FAPE, then the Court must enquire whether the private school where the parents' placed the student is appropriate and must weigh "equitable considerations relating to the reasonableness of the action taken by the parents." Id. If the State has denied the student a FAPE, if the private school placement is appropriate, and if the equities favor the parents, then the school district must reimburse the parents for the "expenses that it should have paid all along." Id. (internal quotation marks and citation omitted).

The Second Circuit recently rejected the use of "retrospective testimony" in considering the sufficiency of an IEP. R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 185-88 (2d Cir. 2012). That court did not apply a rigid "four corners" approach,

9

however.  Instead, it held that "[w]hile testimony that materially alters the written plan is not permitted, testimony may be received that explains or justifies the services listed in the IEP." Id. at 186.  Furthermore, "[w]hen an IEP adequately provides a FAPE, it is within the discretion of the IHO and SRO to amend it to include omitted services." Id. at 188.

### B. Procedural Considerations

Not every procedural error will render an IEP legally inadequate. Id. Rather, relief is warranted only if the alleged procedural inadequacies "(I) impeded the child's right to a [FAPE]; (II) significantly impeded the parents' opportunity to participate in the decisionmaking process regarding the provision of [a FAPE] to the parents' child; or (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii).

When developing an IEP, a CSE is required to "review existing evaluation data on the child, including–(i) evaluations and information provided by the parents of the child; (ii) current classroom-based, local, or State assessments, and classroom-based observations; and (iii) observations by teachers and related service providers." 20 U.S.C. § 1414(c)(1)(A).  After reviewing that information, the CSE then determines whether additional data are needed to complete the IEP.  20 U.S.C. § 1414(c)(1)(B).  If needed, the CSE should administer an assessment or evaluation. 20 U.S.C. § 1414(c)(2).  The CSE is authorized to decide that no further evaluations are needed.  20 U.S.C. § 1414(c)(4).  State and federal regulations also require the that the results of the initial or most recent evaluation of the student and any

independent evaluations obtained at public expense be considered in connection with the development of the IEP.  34 C.F.R. § 300.324; N.Y. Comp. Codes R. & Regs. tit. 8, §§ 200.4(f)(1), 200.5(g)(1)(vi).

Furthermore, "New York regulations require the department to conduct an FBA for a student 'whose behavior impedes his or her learning or that of others.'" R.E., 694 F.3d at 190 (quoting N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(b)(1)(v)). An FBA is defined as "the process of determining why the student engages in behaviors that impede learning and how the student's behavior relates to the environment." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1(r); see also id. § 200.22(a).  Even in the absence of both an FBA and a BIP, however, the provision of a 1:1 paraprofessional aide can render the IEP adequate where there is evidence that the aide would provide "significant benefits . . . in addressing the problematic behaviors." T.Y. v. N.Y.C. Dep't of Educ., 584 F.3d 412, 419 (2d Cir. 2009).  The sufficiency of a school district's strategies for dealing with interfering behavior "is precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers." A.C. ex rel. M.C. v. Bd. of Educ., 553 F.3d 165, 172-73 (2d Cir. 2009) (quoting Grim, 346 F.3d at 382).  However, the Court should "take particular care to ensure that the IEP adequately addresses the child's problem behaviors" where the CSE has failed to conduct an FBA.  R.E., 694 F.3d at 190.

Federal and state law also require an IEP for a student who is at least sixteen years old to include a transition plan with measurable goals to prepare the student for post-secondary education, employment, and independent living.  See 20

11

U.S.C. § 1414(d)(1)(A)(viii); 34 C.F.R. 300.320(b); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(d)(2)(ix).  The Seventh Circuit has found the failure to provide a transition plan is a procedural flaw, Bd. of Educ. v. Ross, 486 F.3d 267, 276 (7th Cir. 2007), a view that has been endorsed by the Fifth Circuit.  Klein Indep. Sch. Dist. v. Hovem, 690 F.3d 390, 398 (5th Cir. 2012).

### C. Substantive Considerations

When reviewing substantive compliance, the IDEA provides only for a "basic floor of opportunity . . . consist[ing] of access to specialized instruction and related services which are individually designed to provide educational benefit to the handicapped child." Bd. of Educ. v. Rowley, 458 U.S. 176, 201 (1982) (internal quotation marks omitted).  An IEP is appropriate if it "is likely to produce progress, not regression" and provides an opportunity for more than mere "trivial advancement." Walczak, 142 F.3d at 130 (internal quotation marks omitted).  The IDEA only guarantees "an appropriate education, not one that provides everything that might be thought desirable by loving parents." Id. at 132 (internal quotation marks omitted).

The IDEA requires, inter alia, "(I) a statement of the child's present levels of academic achievement and functional performance . . . (II) a statement of measurable annual goals, including academic and functional goals . . . [and] (III) a description of how the child's progress toward meeting the annual goals described in subclause (II) will be measured." 20 U.S.C.A. § 1414(d)(1)(A)(i)(I), (II) and (III).  An IEP is not necessarily defective solely because the annual goals are stated in

12

general terms, as long as those goals are supported with detailed short-term objectives.  See Tarlowe v. N.Y.C. Bd. of Educ., 07 Civ. 7936, 2008 WL 2736027, at *9 (S.D.N.Y. July 3, 2008).

### D. Waiver Considerations

The preservation of an issue on appeal is a matter of both federal and state law.  Federal law requires "any party aggrieved by the findings and decision" of an initial administrative hearing to be able to "appeal such findings and decision to the State educational agency."  20 U.S.C. § 1415(g)(1).  To comply with that requirement, New York allows "[a]ny party aggrieved by the findings of fact and the decisions of an impartial hearing officer" to appeal to an SRO.  N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(k)(l).  New York also permits any "respondent who wishes to seek review of an [IHO]'s decision" to "cross-appeal from all or a portion of the decision by setting forth the cross-appeal in [the] respondent's answer."  Id. § 279.4(b).  Because the decision of the IHO is "binding upon both parties unless appealed" to the SRO, id. § 200.5; see also 34 C.F.R. § 300.514, parties must appeal (or cross-appeal) any adverse findings of the IHO to preserve those arguments.  See, e.g., C.L. v. N.Y.C. Dep't of Educ., No. 12 Civ. 1676, 2013 WL 93361, at *8 (S.D.N.Y. Jan. 3, 2013).

New York law also provides that "[t]he party requesting the impartial due process hearing shall not be allowed to raise issues at the impartial due process hearing that were not raised in the notice filed under subdivision (i) of this section, unless the other party agrees otherwise."  N.Y. Comp. Codes R. & Regs. tit. 8, §

200.5; see also C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ., 2011 WL 5130101, at *9 (S.D.N.Y. Oct. 28, 2011) (finding that plaintiffs' "failure to raise [an] issue in their due process complaint rendered improper the IHO's consideration of [that issue]").

## III. STANDARD OF REVIEW

When an IHO and SRO reach conflicting conclusions, as here, the Court generally defers to the SRO. R.E., 694 F.3d at 189. The amount of deference "depends on the quality of that opinion." Id.

District courts independently review the administrative record and make determinations based on a preponderance of the evidence. See M.H., 685 F.3d at 240. Because the judiciary lacks expertise in educational policy, courts will not "substitute their own notions of sound educational policy for those of the school authorities which they review." Rowley, 458 U.S. at 206.

Courts may not "make subjective credibility assessment[s]" or "ch[oose] between the views of conflicting experts on . . . controversial issue[s] of educational policy . . . in direct contradiction of the opinions of state administrative officers who ha[ve] heard the same evidence." Grim, 346 F.3d at 383. More deference is warranted when reviewing "the substantive adequacy of an IEP," the adequacy of an educational methodology, and records containing the same evidence that was before the SRO. M.H., 685 F.3d at 240. Less deference is warranted in appeals involving an IEP's procedural validity, objective indications of student progress, and records with new evidence. Id.

## IV. DISCUSSION

This Court first considers the procedural adequacy of the development of the IEP, including: (1) whether the CSE considered sufficient evaluative information, (2) whether the failure to perform an FBA and alleged inadequacies in the BIP rose to the level of denying the Student a FAPE, and (3) whether the transition plan was sufficient.  Next, this Court analyzes the substantive sufficiency of the IEP, including: (1) the adequacy of the provision of the Student's present levels of performance and needs, (2) the adequacy of the annual goals, and (3) the appropriateness of the placement classroom.  Finally, this Court turns to those issues defendant argues plaintiffs should not be able to raise.

As discussed below, while plaintiffs do point to flaws in the development and substance of the Student's IEP, the Court agrees with (and defers to) the SRO's ultimate conclusion that none of these flaws rose to the level of denying the Student a FAPE.

### A. Procedural Sufficiency

#### 1. Consideration of Evaluative Information

First, plaintiffs allege that the CSE developed the IEP using insufficient evaluative information because the CSE failed to consider Dr. Steinberg's 2008 evaluation and because the CSE failed to conduct a new evaluation in light of the Student's alleged great variability in functioning.  (Pls.' Mem. Law Supp. Pls.' Mot. Summ. J. 3, ECF No. 11 ("Pls.' Mem. Summ. J.").)  While the CSE is required to consider certain evaluative information from the child's parents and teachers (or

related service providers), the IDEA does not explicitly require that it consider all potentially relevant evaluations from the child's doctor. See 20 U.S.C. § 1414(c)(1)(A). Moreover, the CSE has the discretion to determine that no new evaluation is required. Id. § 1414(c)(4).

Here, the SRO found that the CSE considered sufficient information, and the Court declines to disturb its conclusion. The CSE considered numerous reports provided by Kulanu, including Speech and Language, Occupational Therapy, Physical Therapy, counseling, transition progress, academics, and vocational reports. These reports were from the 2009-2010 school year, suggesting that they provided an up-to-date picture of the Student's academic levels, notwithstanding any alleged variability in day-to-day functioning. Additionally, the CSE received input from numerous Kulanu representatives, including the Student's classroom teacher, his occupational therapist, his speech therapist, his vocational education teacher and his social worker. (DSOF ¶ 4.) Given the quantity and quality of the evaluative information it considered, the CSE was authorized to decide that no further evaluations were needed. 20 U.S.C. § 1414(c)(4).

Although the CSE did not specifically discuss Dr. Steinberg's 2008 psychological evaluation, the SRO found "no evidence demonstrating that [such a failure] compromised [the representatives'] abilities to meaningfully participate in the development of the student's IEP." (SRO Decision 18.) This Court agrees.[1]

---

[1] Plaintiffs argue that the SRO improperly made its own credibility determination and therefore does not warrant deference. (Pls.' Mem. Summ. J. 5.) This argument is unavailing, however, because the SRO did not rely on the credibility of Ms. Levine's testimony, but instead found that the non-consideration of Dr. Steinberg's evaluation did not deny the Student a FAPE.

Indeed, Dr. Steinberg's evaluation directly recommends placing the Student in a 12:1:1 classroom, which was one of the major changes the CSE made in the 2010-2011 IEP from the previous IEP.  Therefore even if the CSE did not consider Dr. Steinberg's evaluation, such a failure would not rise to the level of denying the Student a FAPE.  The SRO's careful and considered analysis of this issue warrants deference.

### 2. Failure to Conduct an FBA and Sufficiency of the BIP

Next, plaintiffs argue that the CSE's failure to conduct an FBA resulted in an insufficient BIP because it failed to describe the Student's inappropriate touching and failed to include a schedule to measure the effectiveness of interventions, among other alleged inadequacies.  "New York regulations require the department to conduct an FBA for a student 'whose behavior impedes his or her learning or that of others.'"  R.E., 694 F.3d at 190 (quoting N.Y. Comp. Codes R. & Regs. tit. 8 § 200.4(b)(1)(v)).  The IEP provided the Student with a 1:1 crisis management paraprofessional, however, who would have been able to assist with any behavioral issues the Student might have had, thereby providing "significant benefits . . . in addressing the problematic behaviors."  T.Y., 584 F.3d at 419.[2]  The Court therefore

---

[2] See also Pls.' Reply Mem. Law Supp. Pls.' Mot. for Summ. J. 8-9, ECF No. 17 ("Pls.' Reply") (arguing that plaintiffs' chosen private school, Kulanu, was an appropriate placement even though that school failed to develop and implement a BIP until several months into the school year because, among other considerations, the school "provided [the Student] with a 1:1 crisis-management paraprofessional").

17

finds that any deficiencies in the BIP were cured by the IEP's provision of a full-time 1:1 paraprofessional.[3]

### 3. Adequacy of the Transition Plan

Plaintiffs further argue that the IEP failed to provide an adequate transition plan. The SRO agreed that the transition plan contained certain deficiencies, such as the failure to specify activities that would help develop math and social skills, failure to determine which post–high school programs the Student might join, and the failure to specify who would provide transition services. (SRO Decision 26.) The cumulative nature of these deficiencies led the SRO to conclude that the IEP "did not comport with statutory or regulatory requirements." (Id.) Nonetheless, the SRO concluded that the transition plan's deficiencies did not deny the Student a FAPE because the placement school employed a "transition coordinator" and a "job developer," who both provided transition support. (Id. at 27.) After the SRO made its decision, however, the Second Circuit disallowed the reliance on retrospective testimony. R.E., 694 F.3d at 185-88. Plaintiffs argue the SRO therefore improperly cited the availability of transition support.

Even if the SRO improperly relied on retrospective testimony, however, this Court finds that the alleged flaws did not deny the Student a FAPE. Because a deficient transition plan is a procedural flaw, see Ross, 486 F.3d at 276, relief is warranted only if the procedural inadequacies "(I) impeded the child's right to a [FAPE]; (II) significantly impeded the parents' opportunity to participate in the

---

[3] This Court also finds that the SRO conducted a careful and considered analysis, which warrants deference, particularly where this question deals with the sufficiency of intervention methods. A.C., 553 F.3d at 172-73.

decisionmaking process regarding the provision of [a FAPE] to the parents' child; or (III) caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii).  The deficiencies identified by the SRO — the lack of detail in the description of the transition services and the failure to identify the party responsible for those services (SRO Decision 26-27) — did not deny the Student a FAPE when viewed in the context of the IEP as a whole.  See Karl ex rel. Karl v. Bd. of Educ., 736 F.2d 873, 877 (2d Cir. 1984) (instruct district courts to evaluate the IEP as a whole rather than scrutinizing component parts in isolation). As the SRO noted, the IEP contemplated biannual written reports measuring the Student's progress toward his transition goals.  (SRO Decision 27.)  Moreover, different portions of the IEP indicated responsible parties for services that were intimately linked to the transition services discussed.  (See Administrative R., IHO Ex. 9 at 11-12, 17, ECF No. 27.)  Taken together, the record supports the SRO's conclusion that any flaws in the transition plan do not rise to the level of the denial of a FAPE.

### B. Substantive Sufficiency

#### 1. Present Levels of Performance and Needs

Plaintiffs argue that "the IEP failed to fully and accurately describe [the Student's] levels of performance and needs" as required by the IDEA.  (Pls.' Mem. Summ. J. 8 (referring to 20 U.S.C. § 1414(d)(1)(A)(i)(I)).)  The SRO held differently, finding that the IEP described the Student's reading, writing, math, social, and emotional performance and needs in sufficient detail to accurately reflect his special education needs.  (SRO Decision 19-20.)  Indeed, as the SRO (and this Court)

discussed, the CSE considered extensive materials from a variety of sources (including the Parents) to identify a profile of the Student's performance and needs. (See id.); supra Section IV.A.1.  The SRO reasonably concluded that the resulting IEP accurately reflected the Student's needs, and this Court defers to the SRO's careful analysis.

### 2. Sufficiency of the Goals

Plaintiffs also allege that the IEP failed to provide sufficiently measurable goals.  The IEP included eleven annual goals, which "lacked evaluative criteria," according to the SRO.  (SRO Decision 21.)  Each annual goal had multiple corresponding short-term objectives, however, which the SRO found "contained sufficiently detailed information regarding the . . . measurement of progress and [thereby] remedied any deficiencies in the annual goals."  (Id. at 21 (internal quotation marks omitted).)  This Court finds that the SRO's careful and considered analysis warrants deference[4] and affirms the SRO's finding that no flaws in the goals resulted in denying the Student a FAPE.

### 3. The Placement Classroom

Plaintiffs argue that P-721 was not equipped to provide all the related services mandated by the IEP and that the appropriateness of P-721 should be evaluated on the basis of a 10 month assignment that plaintiffs would have

---

[4] The SRO also found "unanimity among the CSE members as to the appropriateness of the goals." (SRO Decision 21.)  Plaintiffs argue that the SRO's conclusion with respect to the goals does not warrant deference (Pls.' Reply 4) because the SRO misinterpreted the evidence in finding unanimity regarding the CSE team's agreement as to the selection of goals and because it disregarded relevant testimony from several of Plaintiffs' witnesses. These witnesses, Ms. Farkas and Ms. Rosenberg, did not attend the CSE meeting, however, so their opinions could not have affected the unanimity of the team. The Court does not find these arguments sufficient to refuse to defer to the SRO.

considered accepting, rather than the 12 month period that was actually offered. (Pls.' Mem. Summ. J. 13-14.) The SRO, however, concluded that the offered placement would have been able to provide the Student with the related services mandated by the IEP. (SRO Decision 28.) The SRO's careful and considered analysis warrants deference. This Court therefore finds no reason to find that the Student was denied a FAPE on the basis of the offered placement, even when analyzing a 10 month assignment.

### C. Waiver Issues

Plaintiffs attempt to re-litigate issues that they failed to cross-appeal. Plaintiffs acknowledge that they failed to cross-appeal any of these findings to the SRO, but assert that this constituted a "de minimis error." (Pls.' Mem. Summ. J. 12-13.) The Court disagrees. The IHO in this case reached findings adverse to plaintiffs. Plaintiffs were obligated to cross-appeal those issues to the SRO in order to preserve the reviewability of those issues. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5.[5] The Court therefore affirms the SRO's conclusion that plaintiffs' failure to cross-appeal the IHO's adverse findings waived their right to challenge those of findings.

Plaintiffs also argue that the SRO improperly rejected the IHO's finding as to the sufficiency of the academic instruction at the offered placement. Plaintiffs claim that because defendant "failed to specifically raise the objection in its Petition for review," the SRO should not have reversed the IHO. (Pls.' Mem. Summ. J. at 16.)

---

[5] See also Pls.' Mem. Summ. J. at 14 n.1 (arguing that the IHO's decision was final and binding because defendant failed to challenge that finding).

But defendant did contest the IHO's sua sponte conclusion, arguing that "the IHO should not have examined whether the recommended placement would provide an adequate amount of academics because the Parent did not raise it in the [complaint]." (Def. Mem. Law Before SRO 11 n.8, ECF No. 26.)  Therefore, defendant did not agree to litigate the issue, and this Court affirms the SRO's conclusion that the issue regarding sufficiency of academic instruction was not properly before the IHO.

## V. CONCLUSION

In light of the foregoing, the Court GRANTS defendant's motion for summary judgment and DENIES plaintiffs' motion for summary judgment.  The Clerk of the Court is directed to terminate the motions at ECF Nos. 8 and 13 and to close this case.

SO ORDERED:

Dated:    New York, New York
          March 21, 2013

_____
KATHERINE B. FORREST
United States District Judge